UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANNY FABRICANT,<br><br>            Petitioner,<br><br>     v.<br><br>UNITED STATES OF AMERICA,<br><br>            Defendant. | CV 14-8124-RSWL<br>CR 03-01257-RSWL-1<br><br>**ORDER re: Petitioner's Application for Appointment of Investigator [CR1015, CV5], Application for Leave to Conduct Discovery [CR1016, CV6], and First § 2255 Discovery Motion [CR1017, CV7]** |

Currently before the Court is Petitioner Danny Fabricant's ("Petitioner") three related discovery requests [CR1015/CV5, CR1016/CV6, CR1017/CV7] ("Requests") in which Petitioner requests discovery and the appointment of an investigator in connection with Petitioner's recently filed 28 U.S.C. § 2255 motion. Petitioner's Ex Parte Application for Leave to Conduct Discovery [CR1016, CV6] requests leave pursuant to Rule 6 of the Rules Governing 28 U.S.C. § 2255 Proceedings

1

("Rule 6") to conduct the discovery specified in Petitioner's First Section 2255 Discovery Motion [CR1017, CV7]. Petitioner's related Ex Parte Request for the Appointment of Investigator Lee Cole [CR1015, CV5] requests government-funded investigative services pursuant to 18 U.S.C. § 3006A(e). The Government opposes [CR1033, CV20] all three Requests.

The Court, having considered all papers submitted pertaining to these Requests, **NOW FINDS AND RULES AS FOLLOWS:** Petitioner's Requests [CR1015/CV5, CR1016/CV6, CR1017/CV7] are **DENIED**.

## I. BACKGROUND

In September 2008, Petitioner was re-tried before a jury and convicted [682] of distribution of methamphetamine, conspiracy to distribute methamphetamine, and possession with intent to distribute methamphetamine, in violation of 21 U.S.C. §§ 841, 846. On December 17, 2009, this Court sentenced Petitioner to life imprisonment [848, 849]. On January 30, 2013, the Ninth Circuit affirmed Petitioner's convictions and sentence, United States v. Fabricant, 506 F. App'x 636, 638 (9th Cir. 2013), and on October 15, 2013, the U.S. Supreme Court denied certiorari, 134 S. Ct. 450 (Mem.) (2013).

On October 21, 2014, Petitioner filed a Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 [CR1011, CV1]. On the same day, Petitioner filed the three present discovery requests,

an Ex Parte Application for Appointment of Investigator Lee Cole [CR1015, CV5], an Ex Parte Application for Leave to Conduct Discovery [CR1016, CV6], and a First Section 2255 Discovery Motion [CR1017, CV7].  The Government timely filed its Opposition [CR1033, CV20] opposing all three requests on December 18, 2014. Petitioner timely filed his Reply [CR1034, CV21] on January 12, 2015.

## II. DISCUSSION

**A.   Legal Standard**

   1.   Rule 6

   Rule 6(a)[1] allows a district court to authorize a party to conduct discovery after the party has filed a § 2255 motion with the district court.  Rules Governing Section 2255 Proceedings, rs. 1, 6(a) (2010).  In a Section 2255 proceeding, the "habeas petitioner does not enjoy the presumptive entitlement to discovery of a traditional civil litigant."  Larkin v. Yates, No. CV 09-2034-DSF (CT), 2009 WL 2049991, at *13 (C.D. Cal. July 9, 2009) (citing Bracy v. Gramley, 520 U.S. 899, 903-05 (1997)).  Rather, discovery is available to a Section 2255 movant "only in the discretion of the court and for good cause shown."  Id. (citing Rich v. Calderon, 187 F.3d 1064, 1068 (9th Cir. 1999)); Rules Governing Section 2255 Proceedings, r. 6(a) (2010).

---

[1] Rule 6(a) states that "[a] judge may, for good cause, authorize a party to conduct discovery under the Federal Rules of Civil Procedure and may limit the extent of discovery."  Rules Governing Section 2255 Proceedings, rs. 1, 6(a) (2010).

Good cause exists where "specific allegations give the court a reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is entitled to relief." Easley v. MacDonald, No. CV 12-09989 DDP (AN), 2013 WL 6834638, at *1 (C.D. Cal. Dec. 23, 2013) (citing Smith v. Mahoney, 611 F.3d 978 (9th Cir. 2010)). Rule 6(a) discovery is not appropriate when the movant's discovery requests are mere "fishing expeditions" to investigate speculation or to "'explore [the movant's] case in search of its existence.'" Calderon v. U.S. Dist. Crt. N. Dist. Cal., 98 F.3d 1102, 1106 (9th Cir. 1996); Barno v. Hernandez, No. 08cv2439-WQH, 2011 WL 2039702, at *1 (S.D. Cal. May 25, 2011).

2. 18 U.S.C. § 3006A(e)

The Criminal Justice Act ("CJA"), codified at 18 U.S.C. § 3006A, authorizes, in some circumstances, government funds for investigative services for indigent petitioners "seeking relief under section . . . 2255 of title 28." 18 U.S.C. § 3006A(a)(2), (e); see Guide to Judiciary Policy, Vol. 7, Pt. A, Ch. 3 ("CJA Guidelines") § 310.10.30(a)-(b) (2013); Harris v. United States, No. CV12-4709-VBF, 2012 WL 7845578, at *1 (C.D. Cal. Aug. 20, 2012). Section 3006A(e) allows for court-ordered authorization of government funds for investigative services "upon request" by "[c]ounsel for a person who is financially unable to obtain investigative . . . services necessary for adequate

4

representation" after the court makes an "inquiry in an ex parte proceeding, that the services are necessary and that the person is financially unable to obtain them." 18 U.S.C. § 3006A(e)(1). When a *pro se* movant requests government-funded investigative services under § 3006A(e), the CJA Guidelines require two threshold determinations that the movant is "eligible for representation" under the CJA and that the movant's case is "one in which the interests of justice would have required the furnishing of representation." CJA Guidelines § 310.10.30(a)-(b); see In re Smith, 586 F.3d 1169, 1172 (9th Cir. 2009).

**B. Discussion**

    1. <u>Petitioner's Request for Leave to Conduct Discovery Pursuant to Rule 6(a)</u>

        a. *Petitioner's Request*

Petitioner's Request for Leave to Conduct Discovery [CR1016, CV6] and First § 2255 Discovery Motion [CR1017, CV7] jointly request discovery of the following material pursuant to Rule 6(a):

> (1) copies of all Operation Dequiallo ("OpDeq") Electronic Evidence Recordings ("EE Recordings") and copies of any related transcripts of those Recordings, First § 2255 Discovery Mot. 1;
> (2) any reports or writings memorializing all Federal and State law enforcement contacts made with the family of Cynthia Garcia, id. at 6;
> (3) a photograph, preferably 5 inches by 7 inches,

1     of ATF agent John Ciccone taken in 2002 or 2003,
2     id. at 8;
3     (4) unredacted copies of all OpDeq investigation
4     reports or memorandums, id. at 8-9;
5     (5) a copy of James Richie's testimony in the 2006
6     Las Vegas Hells Angels trial, United States v.
7     Acosta, et al., No. CR-03-542-JCM-PAL, and a copy
8     of the discovery documents in that case related to
9     monies paid to informant James Richie, First § 2255
10     Discovery Mot. 10;
11     (6) any documents supporting ATF agent John
12     Ciccone's testimony in Petitioner's retrial on
13     September 23, 2008, that informant Michael Kramer
14     was "authorized" to own, possess, and/or carry
15     firearms, or a letter stating that the Los Angeles
16     U.S. Attorney's Office and former Assistant U.S.
17     Attorney Rodrigo A. Castro-Silva "had no knowledge
18     of, and did NOT 'Authorize,' Informant Michael
19     Kramer's ownership, possession or carrying of
20     firearms . . . during 2002 or 2003," id. at 11;
21     (7) the "[i]dentities of all persons present at a
22     home on Avenue San Luis, in Woodland Hills, CA,
23     during the 12/03/2003 execution of Federal Search
24     Warrant 03-2589M," id. at 13.
25     Petitioner seeks this discovery material because he
26 believes the evidence would impeach ATF informant
27 Michael Kramer ("Kramer") and ATF Agent John Ciccone
28 ("Agent Ciccone"), both of whom testified against

Petitioner at Petitioner's retrial. Id. at 1-14; Opp'n 2:10-12. Petitioner requests the above discovery to show that informant Kramer engaged in various bad acts such as distribution and use of methamphetamine, assault, theft, frequenting "stripper bars," and murder. First § 2255 Discovery Mot. 3-10, 13-16.

Petitioner also requests the above discovery material to impeach Agent Ciccone. Id. at 7, 11-13. Petitioner speculates that "there is a good probability" Agent Ciccone "contacted the family [of murder victim Cynthia Garcia] and lied to them about Kramer's involvement [in the murder], to get them to agree not to file a Wrongful Death lawsuit." Id. at 7. Petitioner also speculates that Agent Ciccone falsely testified in Petitioner's retrial that informant Kramer, a felon, was "authorized" to carry firearms while acting as an undercover Hells Angels ATF informant. Id. at 11-13. Finally, Petitioner alleges that the false testimony of an informant in an unrelated 2006 Las Vegas Hells Angels case impeaches Agent Ciccone because Agent Ciccone "sat quitely [sic]" while the informant lied on the stand. Id. at 10-11.

b. *Analysis*

A Section 2255 movant is not entitled to discovery, but the court may, in its discretion and for "good cause," grant a § 2255 movant leave to conduct discovery pursuant to Rule 6(a). Rules Governing Section 2255 Proceedings, r. 6(a) (2010); United States

v. Kalfsbeek, No. 2:05-cr-0128, 2013 WL 129409, at *2 (E.D. Cal. Jan. 9, 2013). Good cause exists where "specific allegations give the court a reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is entitled to relief."[2] Easley, 2013 WL 6834638, at *1 (citing Smith v. Mahoney, 611 F.3d 978, 996 (9th Cir. 2010)). The "good cause" analysis requires an analysis of "the essential elements of Petitioner's underlying claim" in order to "determine whether the petitioner has shown 'good cause' for appropriate discovery to prove his claim." Nedley v. Runnels, No. 03-5237, 2007 WL 841788, at *11 (N.D. Cal. Mar. 20, 2007).

Petitioner's discovery requests relate to two underlying claims in Petitioner's § 2255 Motion: Brady due process violations and newly discovered impeachment evidence. 2255 Mot. Mem. P&A, ECF No. CR1013, CV3.

     i. *Legal Standard for § 2255 Motion*

"Under § 2255, the sentencing court is authorized to discharge or resentence a defendant if it concludes that it 'was without jurisdiction to impose such sentence, or that the sentence was in excess of the

---

[2] "Good cause" does not exist, and leave to conduct discovery under Rule 6(a) is not appropriate, when the movant's requested discovery is a mere "fishing expedition" to investigate speculative claims or to search for the existence of possible claims. Calderon v. U.S. Dist. Crt. N. Dist. Cal., 98 F.3d 1102, 1106 (9th Cir. 1996) ("'Federal habeas court must allow discovery . . . only where a factual dispute, if resolved in the petitioner's favor, would entitle him to relief.'").

8

maximum authorized by law, or is otherwise subject to collateral attack.'" United States v. Addonizio, 442 U.S. 178, 184 (1979); see 28 U.S.C. § 2255(a). Here, Petitioner's discovery requests relate to claims of Brady violations and "newly discovered evidence," both of which can only be construed as collateral attacks to Petitioner's sentence.

Collateral attacks on final judgments may prevail only within "narrow limits." Addonizio, 442 U.S. at 185. A valid "collateral attack" under Section 2255 is limited to "constitutional error" or "a fundamental defect which inherently results in a complete miscarriage of justice," rendering the "proceeding itself irregular and invalid." Id. at 185-86; see Trap v. United States, Nos. 12cv1205 BEN/10cr912 BEN, 2013 WL 2444123, at *3 (S.D. Cal. June 3, 2013) ("To warrant relief under § 2255, a prisoner must allege a constitutional, jurisdictional, or otherwise 'fundamental defect which inherently results in a complete miscarriage of justice [or] an omission inconsistent with the rudimentary demands of fair procedure.'" (quoting United States v. Timmreck, 441 U.S. 780, 783-84 (1979)).

        ii. *Brady Claims*

In Brady, "the Supreme Court held that '[t]he suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment,

irrespective of the good faith or bad faith of the prosecution.'" Runningeagle v. Ryan, 686 F.3d 758, 769 (9th Cir. 2012) (quoting Brady v. Maryland, 373 U.S. 83, 87 (1963)). Because a Brady violation "violates due process where the evidence is material," a Brady violation can be a cognizable § 2255 claim. Id.

To prove a Brady violation, the "defendant must prove three elements": (1) the evidence is favorable to the accused because it is exculpatory or impeaching; (2) the evidence was suppressed by the State, either willfully or inadvertently; and (3) prejudice resulted from the State's failure to disclose the evidence. Benn v. Lambert, 283 F.3d 1040, 1052 (9th Cir. 2002); see Runningeagle, 686 F.3d at 769. Evidence is prejudicial, or "material," "'when there is a reasonable probability that, had the evidence been disclosed, the result of the proceeding would have been different.'"[3] Runningeagle, 686 F.3d at 769; Benn, 283 F.3d at 1052. "A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." United States v. Alvarez, 86 F.3d 901, 904 (9th Cir. 1996); Benn, 283 F.3d at 1052.

Here, Petitioner's discovery request for the OpDeq

---

[3] "'[M]ateriality' in the constitutional sense" cannot be established by "mere speculation." Barker v. Fleming, 423 F.3d 1085, 1099 (9th Cir. 2005) (rejecting petitioner's Brady claim based on a "theory woven largely of threads [the petitioner had] created himself," and concluding that a "'mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial'" was not "materiality" for Brady or constitutional purposes).

10

materials could be construed as a <u>Brady</u> violation, as Petitioner asserts that the OpDeq materials contain evidence that could have impeached informant Kramer, who testified against Petitioner at his retrial. <u>See</u> First § 2255 Discovery Mot. 1-6, 8-10; <u>see, e.g.</u>, <u>id.</u> at 4-5 (Petitioner stating that he intends to use the OpDeq recordings "to identify and locate impeachment, etc. evidence, that was hidden by the Government"). Petitioner claims the OpDeq evidence would show that Kramer engaged in various bad acts such as frequenting strip clubs, assaulting people, murdering people, stealing, and snorting methamphetamine. <u>Id.</u> at 1-6.

    The OpDeq material Petitioner requests is "favorable" to Petitioner because it could impeach a government witness, informant Kramer.  But even assuming the evidence was "suppressed" by the State, which is disputed,[4] the evidence is not "material."

    As the Government points out, "Petitioner presented significant evidence to impeach Kramer's credibility at Petitioner's retrial," including Kramer's participation in the Cynthia Garcia murder and Kramer's involvement in other illegal activity such as assault and

---

[4] In the Government's Opposition, the Government claims that it did make available to the defense for inspection all investigative reports related to Petitioner's retrial. Opp'n 8:17-27. The Government explains that the Court had issued an Order of non-disclosure of investigative reports for any unrelated investigations. <u>Id.</u> Petitioner, in his Reply, argues that the "Government is not being entirely truthful" about the disclosure, because only Petitioner's co-counsel Kennedy, and not Petitioner himself, was allowed to look at the reports. Reply 10.

distribution and use of methamphetamine while working for ATF.  Opp'n 7:13-27 (quoting Sept. 26, 2008, Tr. at 114-126).  Upon review of the retrial transcripts, the evidence Petitioner seeks from the OpDeq material is cumulative of the evidence offered by the defense in Petitioner's retrial.  As such, there is no "reasonable probability" that the impeaching, but cumulative, evidence in the OpDeq material would have changed the outcome of the jury's guilty verdict.  Furthermore, though Kramer was an important government witness, the Court agrees that the Government "presented ample other evidence of petitioner's guilt," including recordings of Petitioner's drug transactions, Petitioner's own statements and other witness statements describing Petitioner's drug trafficking business, and the methamphetamine found during a search of Petitioner's residence.  Opp'n 7:28-8:14.  As such, the OpDeq evidence does not rise to the level of materiality for Brady purposes.  See Runningeagle, 686 F.3d at 769.

   Petitioner's request for all investigation reports or any other writings related to the government's contact with the family of murder victim Cynthia Garcia is, for the same reasons as those stated above, not "material."  To the extent Petitioner requests this evidence to impeach informant Kramer, the evidence is cumulative, as the retrial jury was already aware of Kramer's participation in the Garcia murder, as well as Kramer's potential for bias due to the substantial

leniency and benefits Kramer received from ATF and other government agencies for Kramer's work as an informant.  See, e.g., United States v. Kohring, 637 F.3d 895, 908 (9th Cir. 2011) (stating that evidence must be "more than 'merely cumulative' to be material under Brady/Giglio.").

Petitioner also seeks to use the Garcia-related material to impeach testifying Agent Ciccone by showing that Agent Ciccone lied to the Garcia family about Kramer's involvement with the Garcia murder to prevent the family from bringing a civil wrongful death action against Kramer.  First § 2255 Discovery Mot. 7.  Such evidence is arguably speculative, see Barker, 423 F.3d at 1099, but, regardless, is not "material."  The retrial jury knew that ATF made efforts to protect informant Kramer's identity so as not to "jeopardiz[e] the whole operation" and that the government gave Kramer substantial benefits, including immunity or leniency for Kramer's illegal actions.  See, e.g., Sept. 24, 2008, Tr. at 39-40, 53-60, 65-69, 72-74. But even so, evidence that Agent Ciccone lied to the family of murder victim Cynthia Garcia about Kramer's involvement in the murder, while having some impeachment value against Agent Ciccone, is not strong enough impeaching evidence to result in a "reasonable probability" that, had the evidence been disclosed to

13

the jury, the outcome would have been different.[5] See Barker, 423 F.3d at 1096. Furthermore, the Government offered strong evidence of Petitioner's guilt that did not depend on Agent Ciccone's credibility, such as the methamphetamine found at Petitioner's residence, Petitioner's own recorded statements and actions, and the incriminating testimonies of other witnesses like Special Agent David Hamilton and Special Agent Christopher White.

Petitioner's other discovery requests are arguably not subject to Brady, but even if they are, the requested discovery is not "material" for the same reasons as those stated above: the cumulative nature of the evidence, the existence of strong independent evidence of Petitioner's guilt, and the evidence's weak impeachment value.

### iii. *Newly Discovered Evidence Claims*

Petitioner's requested discovery material, if not supporting Petitioner's Brady violation claims, support Petitioner's § 2255 claims of newly discovered impeaching evidence. 2255 Mot. Mem. P&A I 5-1 to 5-3.

---

[5] The cumulative impeaching effect of this evidence against both Agent Ciccone and informant Kramer does not rise to the level of "materiality" due to the strong evidence of Petitioner's guilt that did not depend on Kramer's or Agent Ciccone's testimonies, but primarily due to the cumulative nature of the evidence and the weak impeachment value of the evidence. See Barker, 423 F.3d at 1094 (noting that the Supreme Court requires that the materiality of withheld evidence be analyzed cumulatively).

A mere "evidence-based claim," such as newly discovered impeaching evidence, that does not rise to the level of "an independent constitutional violation," "is not cognizable under § 2255." United States v. Berry, 624 F.3d 1031, 1038 (9th Cir. 2010). Rather, the "proper device for such a claim is Federal Rule of Criminal Procedure 33, which allows a prisoner to move for a new trial based on newly discovered evidence."[6] Id.; see Fed. R. Crim. P. 33(b)(1). Here, Petitioner cannot prevail under either § 2255 or Rule 33.

None of the discovery material requested by Petitioner supports "an independent constitutional violation" beyond possible Brady violations, which have already been discussed and rejected above. Berry, 624 F.3d at 1038. Petitioner seeks merely to impeach government witnesses, and such an "evidence-based claim," without more, is not cognizable under § 2255. Id. Petitioner cannot prevail under Rule 33 because Petitioner's § 2255 Motion construed as a Rule 33 Motion is untimely, and the Government has not waived that defense.[7]

---

[6] The Ninth Circuit has directed that, as long as the petitioner's Rule 33 claims are within the time limit required by Rule 33, "a motion under § 2255 that raises evidence-based claims should be treated as a motion for a new trial." Berry, 624 F.3d at 1038-39.

[7] Rule 33 requires the motion to "be filed within 3 years after the verdict or finding of guilty." Fed. R. Crim. P. 33(b)(1). Petitioner's guilty verdict was rendered on September

15

1    Petitioner has thus failed to establish "good
2 cause" for his discovery requests and, as such, the
3 Court **DENIES** Petitioner's Ex Parte Application for
4 Leave to Conduct Discovery [CR1016, CV6] and First
5 Section 2255 Discovery Motion [CR1017, CV7].
6       2.   <u>Petitioner's Request for the Appointment of</u>
7            <u>Investigator Pursuant to 18 U.S.C. § 3006A(e)</u>
8            a.   *Petitioner's Requests*
9    Petitioner seeks the appointment of an investigator
10 named Lee Cole pursuant to 18 U.S.C. § 3006A(e).  Req.
11 Appointment Investigator 1, ECF No. CV5, CR1015.
12 Petitioner explains that the appointment of
13 Investigator Cole is necessary to:
14 (1) locate "documentary evidence," <u>id.</u> at 1-2;
15 (2) "[l]ocate, interview, obtain declarations from and
16 (later) arrange the testimony of (at least) the below
17 named . . . persons, who have relevant impeachment
18 information about the informant formerly known as
19 Michael Kramer," by showing that Kramer spent time at a
20 strip club, assaulted people at the strip club, snorted
21 methamphetamine, sold someone "military explosive,"
22 carried firearms, murdered a women, stole items from a

---

26, 2008.  Dckt. # CR683.  Petitioner's § 2255 Motion was filed on October 21, 2014, and even with the prison mailbox rule's earlier date of October 7, 2014, Petitioner's Motion is not timely under Rule 33.  Rule 33's time limit can be waived if the government fails to raise that defense, but here, the Government preserved the defense by opposing an untimely Rule 33 motion in its Opposition.  Opp'n 9:13-21; <u>see</u> <u>Berry</u>, 624 F.3d at 1038-39.

16

house, stole a man's wallet, assaulted a man with a baseball bat, and stole money from ATF, <u>id.</u> at 2-7.

  b. *Analysis*

When a *pro se* movant is requesting government-funded investigative services, the CJA Guidelines require two threshold determinations that the movant is both "eligible for [legal] representation" under the CJA and that the movant's case is "one in which the interests of justice would have required the furnishing of representation."[8]  CJA Guidelines § 310.10.30(a)-(b).

A person, such as Petitioner, "seeking relief under section . . . 2255" is "eligible for representation" under the CJA.  18 U.S.C. § 3006A(a).  To determine whether appointment of counsel is in the "interests of justice,"[9] a court evaluates "the likelihood of success on the merits as well as the ability of the petitioner to articulate his claims *pro se* in light of the complexity of the legal issues involved."  <u>United</u>

---

[8] There is no constitutional right to the appointment of counsel in a habeas proceeding.  <u>Harris v. United States</u>, at *1 (C.D. Cal. Aug. 20, 2012) (citing <u>Brown v. Vasquez</u>, 952 F.3d 1164, 1168 (9th Cir. 2001)).

[9] <u>See</u> <u>Kiehle v. Ryan</u>, No. CV-11-00352-PHX-GMSO, 2013 WL 5718949, at *3 (D. Az. Oct. 18, 2013) ("It is important to reiterate that . . . the interests of justice are only a prerequisite to the court's discretionary power to appoint counsel.  The only time a court is required to appoint counsel in habeas petition is when it is necessary under the circumstances in order to prevent a due process violation, or under the statute and rules discussed above.  In all other cases it is left to the court's sound discretion whether to appoint counsel if the interests of justice so require.").

States v. Ives, 67 F.3d 309, at *1 (9 th Cir. 1995) (unpub. op.) (quoting Weygandt v. Look, 718 F.2d 952, 954 (9th Cir. 1983) (per curiam)). The Court finds that appointing representation for Petitioner would not be in the interests of justice, as Petitioner is more than capable of articulating his claims *pro se* and has not shown a likelihood of success on the merits, especially for those claims for which Petitioner requests an investigator. Petitioner has filed, since his confinement, numerous "motions with accompanying memoranda of points and authorities with supporting affidavits" that show his sufficient ability to research and understand the law and to assert his intended claims. United States v. Ellsworth, 547 F.2d 1096, 1098 (9th Cir. 1976). Because it would not be in the "interests of justice" to furnish Petitioner with representation,[10] Petitioner's Application [CR1015, CV5] for federally-funded investigative services pursuant to 18 U.S.C. § 3006A(e) is **DENIED.**[11] See 18 U.S.C.

---

[10] Because this threshold determination automatically precludes Petitioner's § 3006A(e) request, the Court need not hold an "ex parte proceeding" to determine "that the services are necessary and that the person is financially unable to obtain them." 18 U.S.C. § 3006A(e)(1).

[11] See also, Martinez v. Campbell, No. CIV 06-0831 ALA HC, 2007 WL 2389821, at *1 (E.D. Cal. Aug. 20, 2007); see also Covarrubias v. Gower, No. C-13-4611 EMC (pr), 2014 WL 342548, at *2 (N.D. Cal. Jan. 28, 2014) ("Without permission to conduct discovery [pursuant to Rule 6(a)], a reasonably competent counsel would not hire an investigator to assist in such discovery." (referring to United States v. Rodriguez-Lara, 421 F.3d 932 (9th

3006A(a)(2)(b); CJA Guidelines § 310.10.30(b).

## V. CONCLUSION

Based on the foregoing analysis, the Court **DENIES** Petitioner's three discovery-related Requests: Ex Parte Application for Appointment of Investigator Lee Cole [CR1015, CV5], Ex Parte Application for Leave to Conduct Discovery [CR1016, CV6], and First Section 2255 Discovery Motion [CR1017, CV7]. The lodged discovery requests [14][22] shall not be propounded.

**IT IS SO ORDERED.**

DATED: February 25, 2015     RONALD S.W. LEW

**HONORABLE RONALD S.W. LEW**
Senior U.S. District Judge

---

Cir. 2005)).